**UNITED STATES of America, Appellee,**

v.

**Gus CURCIO, Defendant-Appellant.**

**No. 1362, Docket 87-1149.**

United States Court of Appeals, Second Circuit.

Argued Aug. 13, 1987.

Decided Aug. 17, 1987.

Mervyn Hamburg, U.S. Dept. of Justice, Washington, D.C. (Stanley Twardy, U.S. Atty., New Haven, Conn., of counsel), for appellee.

Andrew B. Bowman, Westport, Conn., for defendant-appellant.

Before WINTER and MAHONEY, Circuit Judges, and RE,* Chief Judge.

PER CURIAM:

Gus Curcio appeals from Judge Burns' denial of his motion for a new trial. The underlying conviction to which the motion was directed was affirmed by this court in a published opinion, *United States v. Curcio,* 759 F.2d 237 (2nd Cir.1985), familiarity with which is assumed.

█ Curcio's motion raised two claims. First, he argues that a new trial should have been granted on the ground that the government was in fact able to produce extrinsic evidence of so-called "other crimes evidence" and that it misled the

---

* The Honorable Edward D. Re, Chief Judge for the United States Court of International Trade, sitting by designation.

district court, and thereafter this court, in asserting that the witnesses to those events were not available at trial. In support of this claim, Curcio offered evidence that some witnesses to the so-called other crimes were not only available but were in the courthouse at the time of trial and that other witnesses were available if reasonable steps had been taken to locate them.

Curcio's argument, however, misapprehends the basis of our previous decision. In that decision, we stated that the failure to offer live testimony was relevant only to whether there was a factual basis for the cross-examination of defense witnesses regarding incidents of violence involving customers dissatisfied with Hawley machines. *Id.* at 240. Because we viewed the issue as involving the propriety of cross-examination testing the credibility of those witnesses rather than the admissibility of evidence of other crimes, we held that the cross-examination was proper if it had a factual basis, whether or not the government introduced extrinsic evidence. We thus noted, "[t]he cross-examination was not intended to demonstrate any such direct involvement [in the other crimes] ... but rather to probe into the plausibility of the version of events ... given at trial by [defendant's witnesses]." *Id.* at 241. Whether the government did or did not produce extrinsic evidence of the other crimes is thus irrelevant to the propriety of the cross-examination so long as government counsel had grounds to believe that the other incidents had occurred. Our examination of the record before us on the prior occasion led us to conclude that government counsel had ample grounds to believe the other incidents of violence had occurred. *See id.* at 240–41. The record now before us reinforces that conclusion.

Finally, we fail to perceive how Curcio would be helped in his defense by the introduction of extrinsic evidence of other acts of violence involving Hawley machines. In light of the fact that there is no evidence directly connecting him to that violence, *see id.* at 241, we would have expected him to argue that even if the cross-examination was, as we have held, proper, extrinsic

evidence of the other incidents was inadmissible.

■ Curcio's second claim is that the government failed to disclose to the defense that FBI agents had promised assistance in straightening out a local police investigation involving stolen credit cards to a witness who testified for the prosecution .at Curcio's trial. In support of this claim, Curcio has submitted the transcript of a phone conversation between a defense investigator and the eyewitness. In response, the government submitted affidavits from the FBI agents in question denying that any such assistance had been promised. Judge Burns rejected this claim without holding an evidentiary hearing. We believe she was correct in doing so. The phone conversation simply does not support the claim that the eyewitness had been promised assistance by the FBI in resolving his problems with local police in exchange for his cooperation. The phone conversation was, as the investigator himself noted while talking to the witness, quite confusing. The most informative portion reads as follows:

INVESTIGATOR: You know how the FBI became aware of this credit card situation?

WITNESS: They never brought it up exactly, they just said if I have any problems or ever have any problems, you know.

INVESTIGATOR: So they weren't referring to this credit card situation specifically.

WITNESS: No. They just you know.

INVESTIGATOR: In other words, you assumed, you came to that conclusion.

WITNESS: Yea, I kinda figured they must have known, you know.

INVESTIGATOR: So that in truthfulness it could also be that the police never really did have a case against you for these credit cards?

WITNESS: It could be that, I mean.

Curcio's evidentiary submission in support of his claim of an undisclosed promise of assistance is thus insufficient on its face. The witness at best speculated about knowledge the FBI might have had and, as

Judge Burns concluded, did not state "that the FBI knew about the credit card arrest, much less helped [him] evade prosecution for that offense."

We therefore affirm.